UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| NATHAN PICKERING, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) |
| VIRGINIA STATE POLICE, | ) ) |
| and | ) Civil Action No. 3:14-cv-163 ) |
| COLONEL W. STEVEN FLAHERTY, | ) ) |
| Superintendent of Virginia State Police, | ) ) |
| *Defendants*. | ) ) |

**AMENDED COMPLAINT**

Comes now the Plaintiff, Nathan Pickering, by counsel, and for his Amended Complaint against the Virginia State Police and Colonel W. Steven Flaherty, Superintendent of the Virginia State Police, alleges as follows:

**NATURE OF CLAIMS**

1. Plaintiff Nathan Pickering ("Plaintiff") is a disabled veteran of the United States Army who suffers from Post-Traumatic Stress Disorder ("PTSD") and depression. Plaintiff was employed by Defendant, Virginia State Police ("VSP"). The Defendant, Colonel W. Steven Flaherty, Superintendent of Virginia State Police ("Superintendent") is the Chief Officer of the VSP and is sued herein in his official capacity. On March 18, 2013, the VSP terminated Plaintiff. This is a civil action under Section 504(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter the "ADA"), seeking damages and injunctive relief against the VSP and the Superintendent.

1

2. Plaintiff seeks declaratory judgment, injunctive relief, back pay, benefits, compensatory damages, front pay and/or reinstatement, and costs and attorney's fees for violations of the Rehabilitation Act. Plaintiff seeks declaratory judgment, injunctive relief against the Superintendent, front pay or reinstatement (or a combination of front pay and reinstatement) and costs and attorney's fees for ADA violations.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12117 (a).

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendant resides in this district and the acts complained of occurred within the jurisdiction of the United States District Court for the Eastern District of Virginia.

5. Plaintiff filed a timely charge alleging discrimination on the basis of disability with the United States Equal Employment Opportunity Commission (EEOC) on or about March 20, 2013. The EEOC issued a Right-to-Sue letter on December 19, 2013.

6. Plaintiff initiated this action within 90 days of the of the date of the receipt of the Right-to-Sue letter.

## PARTIES

7. Plaintiff is a male U.S. citizen and resident of Colonial Heights, Virginia. At all times relevant to the matters alleged herein, Plaintiff was an employee within the meaning of the ADA pursuant to 42 U.S.C. § 12111(4). At all times relevant to this Complaint, Plaintiff has been a qualified individual with a disability within the meaning of the Rehabilitation Act and the ADA.

8. VSP is a state agency that acts as the state police force for the Commonwealth of

Virginia.

9.  VSP is an entity that receives federal funds to operate various programs, including but not limited to its Virginia Fusion Center.

10. Defendant Superintendent is the Chief Officer of Defendant VSP.

11. Plaintiff was employed at the VSP Virginia Fusion Center from October 25, 2012 until March 18, 2013.

**FACTUAL ALLEGATIONS**

12. Plaintiff graduated from high school in 1999. That same year, he joined the Army and completed Basic Combat Training at the US Army Training Center at Ft. Jackson, South Carolina.

13. Plaintiff served in the Army from August 17, 1999, to December 20, 2003, when he received an honorable discharge.

14. In 2000, Plaintiff received Advanced Individual Training as a Mortuary Affairs Specialist at Ft. Lee, Virginia.

15. While in the Army, Plaintiff served in the 54th QM BN, 249th Group, the Mortuary Affairs Group, where he was responsible for recovering the remains of fallen American troops, enemy soldiers and combatants, and civilians.

16. Upon information and belief, the Mortuary Affairs Group has had some of the highest rates of post-traumatic stress disorder (PTSD).

17. On September 11, 2001, Plaintiff had just returned to Fort Lee from a tour working at the Landstuhl, Germany, mortuary. His unit was deployed to the Pentagon on September 12, 2001 to assist with the recovery of remains.

18. Plaintiff is a veteran of the American conflicts in Afghanistan. He served in

3

combat in Afghanistan from April 21, 2002 through December 2, 2002. In Afghanistan, Plaintiff's unit responded to any fatal incident to recover U.S., Coalition, and enemy dead. The unit would return U.S. personnel home with full honors, and return enemy casualties to their families through Red Cross contacts.

19. After receiving his honorable discharge, Plaintiff worked for the CIA with Top Secret clearance in Northern Virginia as a Security Protective Officer, and, subsequently, for the Petersburg, Virginia Police Department as an undercover narcotics officer.

20. In 2004 Plaintiff was diagnosed with PTSD and depression.

21. Plaintiff's health conditions are chronic conditions.

22. Plaintiff's symptoms include impaired impulse control, anxiety, chronic sleep impairment, and depressed mood.

23. Plaintiff's PTSD and depression constitute mental and physical impairments that substantially limit several major life activities, including without limitation, brain function, his mental and emotional health, his ability to concentrate, thinking and interacting with others.

24. At all times relevant to the matters alleged herein, Plaintiff's mental health condition constituted a disability with the meaning of the ADA and the Rehabilitation Act.

**Despite his disability Plaintiff continued to excel in his career.**

25. Throughout his career Plaintiff continued to seek specialized training attending various training academies. He is self-taught in listening, writing, and speaking Russian and Spanish.

26. On September 10, 2004, Plaintiff was presented with a commendation in recognition of "Dedicated Service and Outstanding Leadership of the 53rd Basic Jail Academy" from the Crater Criminal Justice Training Academy.

27. On September 2, 2005, Plaintiff successfully completed the Crater Criminal Justice Training Academy Firearms Instructor Course.

28. Plaintiff successfully completed a Hazardous Materials Awareness course through the Virginia Department of Fire Programs on April 24, 2006.

29. Plaintiff was certified as a Law Enforcement Officer by the Commonwealth of Virginia's Department of Criminal Justice Services on September 13, 2006.

30. On May 1, 2009, Plaintiff was presented with an "Honorable Service Award" from the City of Petersburg in recognition of continued devotion to duty and personal achievement.

31. On August 6, 2010, Plaintiff received a FEMA Certificate of Achievement to acknowledge that he "reaffirmed a dedication to serve in times of crisis . . ." by completing independent course work in National Response Framework, An Introduction.

32. On March 30, 2011 Plaintiff received a Department of the Army Certificate of Appreciation for "outstanding support to United States Army Operation Group training activities."

33. On February 10, 2012, Plaintiff completed the Central Intelligence Agency Security Protective Service course as an SPS Field Training Officer.

34. In September 2011, while working for the CIA, Plaintiff was recognized with the "Exceptional Performance Award" for "superior accomplishment and valuable service to the Central Intelligence Agency."

**Plaintiff's employment with the Virginia State Police**

35.     In 2012, Plaintiff desired a more regular "nine to five" job and applied with the VSP.

36.     After undergoing a stringent background check, Plaintiff was hired by the VSP on October 25, 2012 as an Agency Management Analyst Senior in the Bureau of Criminal Investigation, Criminal Intelligence Division, Virginia Fusion Center (hereinafter "Fusion Center"). This position required a Secret clearance issued by the Department of Homeland Security which Plaintiff received.

37.     On January 31, 2013, Plaintiff made a comment while at work which appeared to offend his supervisor, Rob Reese, Lead Analyst. Referring to the Sandy Hook Elementary School tragedy that had occurred on December 14, 2012, Plaintiff stated, "it seems like everyone is putting 'shooting up the place' on their bucket list" (the "bucket list statement").

38.     The term "bucket list" had gained popular currency after 2008 and is taken from the name of a movie about two terminally ill men who escape from a cancer ward and go on a road trip with a list of things to do before they "kick the bucket."

39.     The Sandy Hook Elementary School tragedy was the thirteenth mass shooting in the U.S. in 2012. On February 21, 2012, in Norcross, Georgia, Jeong Soo Paek had killed his sisters and their husbands in the family business, and then killed himself. On February 27, 2012, in Chardon, Ohio, 17 year old T. J. Lane had opened fire in his high school cafeteria, killing three people and injuring two others. On March 8, 2012, in Pittsburgh, Pennsylvania, John Schick had started shooting in a psychiatric hospital, killing one person before being shot down by the police. On April 2, 2012, One L. Goh, a former nursing student, had returned to his school in Oakland, California, where he had lined students against a wall and shot them, killing seven

and injuring three. On April 6, 2012, Easter weekend, Jake England and Alvin Watts had gone for a drive around Tulsa, Oklahoma, shooting black males at random, killing three people and injuring two. On May 30, 2012, Ian Lee Stawicki had opened fire in a Seattle coffee shop, killing five and injuring another before fatally shooting himself. On July 20, 2012, James Egan Holmes had opened fire in a movie theater during the midnight premiere of "The Dark Knight Rises," killing twelve people and injuring fifty eight. On August 5, 2012, Wade Michael Page had opened fire in a Sikh temple in Wisconsin, killing six people and injuring three before fatally shooting himself. On August 13, 2012, in College Station, Texas, Thomas Caffall III had opened fire on police, killing two and injuring four, before being killed. On September 27, 2012, in Minneapolis, Andrew Engeldinger, on learning that he was terminated from his job, had shot and killed his two managers, the company owner, two other employees, and a UPS driver before killing himself. On October 21, 2012, Radcliffe Franklin Haughton had gone to his wife's place of employment where he shot her and six other women before killing himself. On December 11, 2012, in Happy Valley, Oregon, Jacob Tyler Roberts had shot people at random in a shopping mall, killing two and injuring one, before killing himself. On December 14, 2012, Adam Lanza had killed his mother at her home before going to the Sandy Hook Elementary School in Newtown, Connecticut, where he had shot and killed twenty six people, including twenty children, and had then killed himself.

40. Plaintiff's bucket list statement was made in reference to the many mass shootings that had preceded and included the Sandy Hook incident.

41. The bucket list statement cannot reasonably be interpreted as a threat of violence or harm.

42. Plaintiff's supervisor, Rob Reese, objected to and claimed he found Plaintiff's

7

"bucket list" statement offensive. When Plaintiff realized that Reese objected to the statement he immediately apologized to him for the comment.

43. VSP suspended Plaintiff on February 1, 2013, pending an internal investigation.

44. On February 3, 2013, Plaintiff sent a letter to Captain Steven Lambert apologizing for his comments, and stating, ". . . I have a VA disability rating in reference to Post Traumatic Stress disorder. One of my symptoms is verbal impulsiveness. . . I understand the reaction taken by my comment but wanted the Virginia State Police to know it was a symptom of my disability."

45. On February 11, 2013, Plaintiff's treating psychiatrist sent a letter to Captain Lambert confirming that Plaintiff's had been diagnosed with PTSD when he returned from Afghanistan in 2004. Plaintiff's psychiatrist further advised that verbal impulsivity is a "target symptom" of PTSD, and that Plaintiff was "engaged in treatment and is currently at low risk for self-harm or harm of others."

46. On March 18, 2013, VSP terminated Plaintiff.

**Defendant has offered inconsistent reasons for Plaintiff's termination.**

47. On February 1, 2013, VSP's articulated reason for suspending Plaintiff was "making workplace threats," and that as a 12-month probationary employee Plaintiff was not entitled to appeal any disciplinary action.

48. On March 18, 2013, VSP had changed its articulated reason for terminating Plaintiff to "failing to follow a direct order."

49. On July 5, 2013, VSP once more revised its original position that Plaintiff was fired for inappropriate comments, this time to add that Plaintiff was fired for "violations of the Workplace Standards of Conduct," specifically for violating the rule, "No employee shall publish

8

or cause to be published any statement in which he/she represents himself as an official spokesman for the Department without authority from the Superintendent."

50. With its third reason for termination, as stated on July 5, 2013, VSP accused Plaintiff of sending an e-mail to his former employer, Petersburg Police Department, contrary to his supervisor's order. Plaintiff never sent the email while employed with VSP.

## COUNT ONE
### Section 504(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)

51. The foregoing allegations are incorporated as if re-alleged herein.

52. VSP has received and continues to receive federal financial assistance and has thus waived Eleventh Amendment immunity for private damages actions against State entities.

53. Plaintiff suffered from PTSD and Depression, NOS, when he made the bucket list statement.

54. Plaintiff was a qualified individual with a disability as those terms are defined by the Rehabilitation Act when he made the bucket list statement.

55. On February 1, 2013, VSP suspended Plaintiff, ostensibly because Plaintiff had made the bucket list statement.

56. VSP's articulated reason for suspending Plaintiff's employment, "making workplace threats," is pretextual. Plaintiff's bucket list statement cannot reasonably be construed as a workplace threat.

57. VSP opened an internal investigation.

58. On February 3, 2013, Plaintiff advised Captain Steve Lambert of his disability of PTSD with a symptom of verbal impulsivity, and stated in his letter, "I understand the reaction taken by my comment but wanted the Virginia State Police to know it was a symptom of my

9

disability."

59. On February 11, 2013, Plaintiff's treating psychiatrist sent a letter to Defendant, confirming Plaintiff's diagnosis of PTSD since returning from Afghanistan in 2004, and stating that Plaintiff was "engaged in treatment and is currently at low risk for self-harm or harm of others."

60. Plaintiff's psychiatrist further advised that verbal impulsivity is a "target symptom" of PTSD.

61. VSP's investigation revealed that Plaintiff was an individual with a disability.

62. VSP's investigation further clearly revealed that Plaintiff's bucket list statement was not a workplace threat.

63. VSP's investigation further revealed that at no time during his employment with Defendants had Plaintiff been a risk for self-harm or harm of others.

64. After receiving the letter from Plaintiff's psychiatrist VSP decided to terminate Plaintiff.

65. VSP's decision to terminate Plaintiff was unreasonable and pretext for unlawfully terminating a qualified individual with a disability.

66. VSP terminated Plaintiff solely because of his disability and because he displayed symptoms of his disability.

67. VSP's actions were done in willful violation of Plaintiff's rights under the Rehabilitation Act.

68. As a direct and proximate result of Defendant's actions, Plaintiff has suffered, continues to suffer, and will in the future suffer injury and damages, including embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation

expense including attorney's fees, medical expense, consequential damages and other injury.

## COUNT TWO
## Americans with Disabilities Act of 1990
## 42 U.S.C. ¶12101 et seq.
## Unlawful Discrimination

69. The foregoing allegations are incorporated as if re-alleged herein.

70. Plaintiff suffered from PTSD and Depression, NOS, when he made the bucket list statement.

71. Plaintiff was a qualified individual with a disability as those terms are defined by the Americans with Disabilities Act when he made the bucket list statement.

72. Plaintiff's supervisor, Rob Reese, pretended and claimed that he found Plaintiff's statement offensive.

73. When Plaintiff realized that Reese objected to the statement he apologized to him for the statement.

74. On February 1, 2013, VSP suspended Plaintiff.

75. VSP's decision to suspend Plaintiff was unreasonable and without any basis.

76. VSP opened an internal investigation.

77. On February 3, 2013, Plaintiff advised Captain Steve Lambert of his disability of Posttraumatic Stress Disorder with a symptom of verbal impulsivity, and stated in his letter, "I understand the reaction taken by my comment but wanted the Virginia State Police to know it was a symptom of my disability."

78. On February 11, 2013, Plaintiff's treating psychiatrist sent a letter to VSP, confirming Plaintiff's diagnosis of PTSD since returning from Afghanistan in 2004, and stating that Plaintiff was "engaged in treatment and is currently at low risk for self-harm or harm of

others."

79. Plaintiff's psychiatrist further advised that verbal impulsivity is a "target symptom" of PTSD.

80. VSP's investigation revealed that Plaintiff was an individual with a disability.

81. VSP's investigation further clearly revealed that Plaintiff's bucket list statement was not a workplace threat.

82. VSP's investigation further revealed that at no time during his employment with Defendants had Plaintiff been a risk for self-harm or harm of others.

83. After receiving the letter from Plaintiff's psychiatrist VSP decided to terminate Plaintiff.

84. VSP's decision to terminate Plaintiff was unreasonable and pretext for unlawfully terminating a qualified individual with a disability.

85. VSP terminated Plaintiff because of his disability and because he displayed symptoms of his disability.

86. VSP's actions were done in willful violation of Plaintiff's rights under the Americans with Disabilities Act.

87. As a direct and proximate result of VSP's actions, Plaintiff has suffered, continues to suffer, and will in the future suffer injury, entitling him to injunctive and declaratory relief, litigation expense including attorney's fees, and other relief.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Nathan Pickering, by counsel, respectfully requests that judgment be entered in his favor and against the Defendants on the above-stated counts, and that in addition this Court issue an Order granting the following:

(i) For appropriate equitable relief against VSP and the Superintendent as allowed by the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) including the enjoining and permanent restraining of these violations, and direction to Defendants to take such affirmative action as is necessary to ensure that the effects of the unlawful employment practices are eliminated and do not continue to affect Plaintiff's or others' employment opportunities;

(ii) Declaring that the acts and practices complained of herein are in violation of the Plaintiffs' rights as secured by the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and the Americans with Disabilities Act, U.S.C. § 12101 *et seq.;*

(iii) Ordering reinstatement of Plaintiff to the position of Agency Management Analyst Senior, or in a position with comparable duties and responsibilities, with equal pay and benefits at Virginia State Police, as Plaintiff would have received but for the Defendants' conduct in violation of the Rehabilitation Act and the ADA, and reinstating all benefits to which Plaintiff would have been entitled but for the illegal termination of his employment, or in the alternative for an award of front pay and future benefits;

(iv) Awarding Plaintiff back pay for violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a);

(v) Awarding Plaintiff compensatory damages in the amount to be determined by the jury at trial;

(vi) Awarding Plaintiff an amount sufficient to offset any adverse tax consequences resulting from a lump sum award or an award of other relief in this action because he was required to file suit to enforce his federally protected rights;

(viii) Awarding Plaintiff other appropriate injunctive relief;

(ix) Awarding Plaintiff incidental and consequential damages, actual attorney's fees

13

and costs of this action, including expert witness fees; and in addition;

(x) Awarding Plaintiff such other and further relief as may be appropriate under the circumstances.

**TRIAL BY JURY IS REQUESTED.**

Respectfully Submitted,

NATHAN PICKERING

By Counsel

\_\_\_\_\_/s/ Tim Schulte_____
Blackwell N. Shelley, Jr. (VSB #28142)
Tim Schulte (VSB #41881)
Lauren Fisher (VSB #80360)
Shelley & Schulte, P.C.
2020 Monument Avenue
Richmond VA 23220
(804) 644-9700
(804) 278-9634 [facsimile]
blackwell.shelley@shelleyschulte.com
tim.schulte@shelleyschulte.com
lauren.fisher@shelleyschulte.com

Timothy E. Cupp (VSB #23017)
Cupp & Cupp
1951 Evelyn Byrd Avenue, Suite D
Harrisonburg VA 22803
(540) 432-9988
(540) 908-8139 [facsimile]
cupplaw@comcast.net

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2014, I will electronically file the foregoing document with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing (NEF) to the following:

Gregory C. Fleming, Esquire

        Nicole Sydnor, Esquire
        Office of the Attorney General
        900 East Main Street
        Richmond, Virginia 23219
        (804) 786-5741
        (804) 225-3064 [fax]
        gfleming@oag.state.va.us
        nsydnor@oag.state.va.us

_____/s/ Tim Schulte_____
Blackwell N. Shelley, Jr. (VSB #28142)
Tim Schulte (VSB# 41881)
Lauren E. Fisher (VSB# 80360)
Shelley & Schulte, P.C.
2020 Monument Avenue
Richmond VA 23220
(804) 644-9700
(804) 278-9634 [fax]
Blackwell.Shelley@shelleyschulte.com
Tim.Schulte@shelleyschulte.com
Lauren.Fisher@shelleyschulte.com