IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

NATHAN PICKERING,

       Plaintiff,

      v.                                             Civil Action No. 3:14-cv-163-JAG

VIRGINIA STATE POLICE, *et al.*

       Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on the defendants' motion to dismiss the amended complaint. (Dk. No. 6.) The plaintiff, Nathan Pickering, filed suit against the Virginia State Police and Colonel W. Stephen Flaherty, the Superintendent of the Virginia State Police. The defendants now move to dismiss the suit for lack of subject matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6).

Pickering brings two claims against the defendants. Count I alleges discrimination in violation of the Rehabilitation Act of 1973. Count II alleges discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"). Because Pickering has pled facts sufficient for a *prima facie* allegation of causation under the Rehabilitation Act, the Court DENIES the defendants' motion to dismiss Count I. Regarding his claim under the ADA, Pickering has sued the proper state official and alleged an ongoing violation of federal law, as required by *Ex Parte Young*. Moreover, his allegation of the timing of his termination sufficiently gives rise to an inference of discriminatory intent under the ADA. For these reasons, the Court DENIES the defendants' motion to dismiss Count II.

## I. Statement of Facts[1]

The Virginia State Police ("VSP") hired Pickering on October 25, 2012, as an Agency Management Analyst Senior in the Bureau of Criminal Investigation. Prior to working for the VSP, Pickering served in the Army from 1999 to 2003, including seven months in Afghanistan during 2002. After his honorable discharge from the Army in 2003, Pickering worked for the CIA as a Security Protective Officer and then for the Petersburg, Virginia, Police Department.

On January 31, 2013, Pickering commented to his VSP supervisor, Rob Reese, about the recent Sandy Hook Elementary school-shooting tragedy that had occurred on December 14, 2012. Pickering stated that "it seems like everyone is putting 'shooting up the place' on their bucket list."[2] (Dk. No. 6 at ¶ 37.) Reese took offense at Pickering's statement, considering it a "workplace threat," and suspended Pickering on February 1, 2013, pending an internal investigation. (Dk. No. 6 at ¶ 47.) On February 3, Pickering sent a letter to Captain Steven Lambert at the VSP apologizing for his comments and explaining that his diagnosis of Post-Traumatic Stress Disorder ("PTSD") includes "verbal impulsiveness." (Dk. No. 6 at ¶ 44.) Just over a week later, Pickering's psychiatrist sent a subsequent letter to Captain Lambert confirming that Pickering had been diagnosed with PTSD when he returned from Afghanistan in 2004.[3] The psychiatrist stated that verbal impulsivity is a "target symptom" of PTSD and

---

[1] Following settled law for a Rule 12(b)(6) motion, the Court views the facts alleged in the complaint in the light most favorable to Pickering. *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). To overcome the defendants' motion to dismiss for failure to state a claim, Pickering must show a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955 (2007).

[2] The term "bucket list" refers to a list of things that one has not done before but wants to do before dying. Merriam-Webster On-line Dictionary, http://www.merriam-webster.com/dictionary/bucket list (last visited Sept. 30, 2014).

[3] Pickering's duties in the Army included serving in a Mortuary Affairs Group, which recovered the remains of fallen American troops, enemy soldiers and combatants, and civilians.

advised that Pickering was "engaged in treatment and is currently at low risk for self-harm or harm to others." (Dk. No. 6 at ¶ 45.)

On March 18, 2013, the VSP informed Pickering of his termination via letter from Captain Lambert. Pickering alleges that the VSP changed its reason for termination to "failure to follow a direct order," and several months later on July 5, 2013, indicated that Pickering had violated a rule against "publishing . . . any statement in which he/she represents himself as an official spokesman for the Department" without authorization. (Dk. No. 6 at ¶¶ 48, 49.) This apparently referred to an email the VSP claims Pickering sent to the Petersburg Police Department, his former employer. Pickering claims he sent the email after his employment with VSP ended. Pickering subsequently commenced this action alleging discrimination based on his disability of PTSD.

## II. Discussion

### A. Rehabilitation Act Claim

To make a *prima facie* case of discriminatory termination under the Rehabilitation Act,[4] a plaintiff must prove that (1) he has a disability; (2) he is otherwise qualified to perform the job; (3) he was terminated solely because of his disability; and (4) the program or activity receives federal funds. *Justus v. Junction Ctr. for Indep. Living, Inc.*, 673 F. Supp. 2d 462, 464-65 (W.D. Va. 2009) (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 467-69 (4th Cir. 1999)). The defendants do not dispute the diagnosis of PTSD offered by Pickering's psychiatrist, nor do they dispute that the VSP receives federal funding for some of its programs, including the Virginia Fusion Intelligence Center, where Pickering worked at the time of his termination.

---

[4] Section 504(a) of the Rehabilitation Act of 1973 states that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

The defendants argue that Pickering fails to sufficiently plead the third prong of the *prima facie* case, that the VSP terminated him "solely because of his disability." (Dk. No. 10 at 10.) Pickering claims that his termination occurred six weeks after his letter revealed to his supervisors, and his psychiatrist's letter confirmed, his PTSD diagnosis. (Dk. No. 6 at ¶¶ 47, 48.) An employer's knowledge "coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the *prima facie* case." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (holding that termination shortly after protected activity satisfied causal connection element at *prima facie* stage)). The brief period of time between the disclosure of his PTSD diagnosis and his termination by the VSP alleged by Pickering establishes the causal connection needed to make a *prima facie* case.

The defendants further assert that plaintiff's *prima facie* case fails because the VSP terminated Pickering because of his threatening statement and not because of his PTSD diagnosis. (Dk. No. 10 at 9.) The plaintiff claims that the VSP changed its rationale for terminating Pickering three times over the course of February to July 2013. The Fourth Circuit has held that an employer's inconsistent post-hoc explanations for its employment decisions may indicate a pretext for discrimination. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 647 (4th Cir. 2002) (citing *EEOC v. Sears Roebuck*, 243 F.3d 846, 852-53 (4th Cir. 2001) ("The fact that Sears has offered different justifications at different times for its failure to hire Santana is, in and of itself, probative of pretext.")). Pickering claims that the VSP first stated on February 1, 2013, that it suspended him for "making workplace threats," changed this reason to "failing to follow a direct order" on March 18, 2013, when it terminated him, and changed it again on July 5, 2013, to publishing "any statement in which he/she represents himself as an

4

official spokesman" without authorization. (Dk. No. 6 at ¶¶ 47-49.) The plaintiff has pled facts sufficient for an allegation of causation under the third prong of the *prima facie* case. Viewing these alleged facts in the light most favorable to the plaintiff, the Court must DENY the defendants' 12(b)(6) motion to dismiss Pickering's claim under the Rehabilitation Act.

### B. Americans with Disabilities Act Claim

Title I of the ADA prohibits any covered entity from discriminating "against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). The defendants challenge Pickering's ADA claim on the grounds of Eleventh Amendment immunity and causation.

### 1. Eleventh Amendment Immunity

The Eleventh Amendment states, in part, that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Supreme Court has construed this protection to "suits brought in federal courts by [a State's] own citizens as well as by citizens of another State." *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248 (4th Cir. 2012) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S. Ct. 1868 (1990)). A state's immunity[5] under the Eleventh Amendment extends to "state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S. Ct. 900 (1997).

A claim against a state or its agent may survive the Eleventh Amendment bar to suit in one of three recognized ways. First, Congress may abrogate state Eleventh Amendment

---

[5] Although protection under the Eleventh Amendment is frequently referred to as immunity, it is actually a limitation on federal court jurisdiction. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480-81 (4th Cir. 2005).

immunity. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S. Ct. 955 (2001).

Second, a state may waive its immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S.

613, 618, 122 S. Ct. 1640 (2002).   Third, a plaintiff may seek prospective relief against state

officials acting in violation of federal law under the principles set forth in *Ex Parte Young*. *Frew*

*ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S. Ct. 899 (2004).   Pickering argues that the

exception under *Ex Parte Young* applies to his ADA claim.

The Supreme Court has stated that *Ex Parte Young* established "an important limit on

sovereign immunity" which has "for more than a century" permitted "federal courts to vindicate

federal rights." *Va. Office of Prot. & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011).   To

take advantage of this narrow exception, a plaintiff must bring an action against the proper state

officials, *see Lee-Thomas*, 666 F.3d at 249, and must properly characterize the relief sought as

prospective and injunctive in nature, *see Frew*, 540 U.S. at 437.   Determining whether a suit may

proceed under *Ex Parte Young* requires only that the court "conduct a straightforward inquiry

into whether the complaint alleges an ongoing violation of federal law and seeks relief properly

characterized as prospective." *Stewart*, 131 S. Ct. at 1639 (internal quotation marks omitted).

The defendants argue that the Eleventh Amendment bars Pickering's claims for damages

and for equitable relief under the ADA.   In response, Pickering notes that his only claim for

damages arises under the Rehabilitation Act, not under the ADA. For his ADA claim, he seeks

declaratory judgment, injunctive relief against the VSP Superintendent, front pay, reinstatement,

or a combination of the two, and costs and attorney's fees.   (Dk. No. 6 at ¶ 2.)   Because the

plaintiff is not seeking retrospective relief under the ADA, the defendants' challenge to damages

under the Eleventh Amendment must fail.

The defendants also argue that the Eleventh Amendment bars Pickering's claims for equitable relief, and cite as support *Cory v. White*, 457 U.S. 85, 91, 102 S. Ct. 2325 (1982), and *McCray v. Md. Dept. of Trans.*, 741 F.3d 480, 483 (4th Cir. 2014). In *Cory*, the plaintiff did not allege a violation of federal statutory or constitutional law, which an *Ex Parte Young* action requires. *Cory*, 457 U.S. at 89. In *McCray*, the plaintiff made an ADA claim but failed to seek relief against any state official, naming only the state agencies involved as defendants. *McCray*, 741 F.3d at 483. Here, Pickering has alleged a violation of federal law, specifically, Title I of the ADA, and seeks prospective injunctive relief against Colonel Steven W. Flaherty, the Superintendent of the VSP, satisfying the requirements articulated in *Frew* and *Lee-Thomas*. *Frew*, 540 U.S. at 437; *Lee-Thomas*, 666 F.3d at 249.

Regarding the defendants' assertion that Pickering has made "no specific claims with respect to Colonel Flaherty," (Dk. No. 10 at 9), Pickering reiterates that the amended complaint names Flaherty as a defendant and alleges that the VSP, under his administration, unlawfully discriminated against Pickering by terminating his employment by reason of his disability. As noted above, the law requires that a plaintiff in an *Ex Parte Young* action bring the complaint against the proper state officials and seek prospective injunctive relief, or else fall under the Eleventh Amendment's bar. *Frew*, 540 U.S. at 437; *Lee-Thomas*, 666 F.3d at 249. The Court finds that Pickering has sued the proper state official and has alleged an ongoing violation of federal law. The plaintiff has satisfied the requirements for a claim under *Ex Parte Young* and overcome the defendants' assertion of immunity under the Eleventh Amendment.

### 2. Causation

To establish a *prima facie* case under the ADA, a plaintiff must allege that (1) he was subject to an adverse employment action; (2) he was a qualified individual with a disability

under the ADA; (3) his performance at the time of the discharge met the legitimate expectations of his employer; and (4) the adverse employment action "occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Brandford v. Shannon-Baum Signs, Inc.*, No. AW-07-0762, 2012 WL 3542604, at *3 (D.Md. Aug.15, 2012) (citing *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001)). Defendants argue that Pickering fails to satisfy the fourth prong of his *prima facie* case, citing *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143 (4th Cir. 2012). In *Reynolds*, the decision turned on the first prong—whether a disability existed— rather than the fourth prong—causation. *Id.* at 150. Here, the defendants do not challenge Pickering's diagnosis of PTSD under the first prong. Instead, the defendants argue that Pickering's "bucket-list" statement and his violation of VSP rules, not his disability, caused his termination.

Pickering alleges in his complaint facts that plausibly demonstrate that his termination occurred under circumstances that raise a reasonable inference of unlawful discrimination. The defendants terminated Pickering six weeks after learning for the first time about Pickering's diagnosis of PTSD. As noted above, this proximity in time "can be sufficient to establish the necessary causal connection between an employee's protected activity and the adverse employment action." *Croy v. Blue Ridge Bread, Inc.*, No. 3:12-cv-34, 2013 WL 3776802, at *5 (W.D. Va. July 15, 2013) (citing *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)). The plaintiff's allegation of his formal diagnosis and the timing of his termination sufficiently give rise to an inference of discriminatory intent. Defendants may assert non-discriminatory reasons for termination on a motion for summary judgment. Pickering has established a *prima facie* case under Title I of the ADA. Accordingly, the Court DENIES defendants' motion to dismiss Pickering's ADA claim.

## III. CONCLUSION

For the reasons set forth above, the Court DENIES the defendants' motion to dismiss as to both counts.

The Court will enter an appropriate order.

Date: October  3  , 2014
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge